on behalf of the Petitioner. I'd first like to state that we have three petitions for review here, and as to the two that relate to the motion to reopen, which are the two O5 cases, Petitioner would like to submit on the briefs and simply focus on the O4 petition for review, which addresses the immigration judge's adverse credibility finding. Your Honors, there are two points that I believe are the most significant for the Court to consider this morning. The first is that the immigration judge found that the Petitioner lacked credibility based on seven points, which either are based on factual misstatements of the record or are based on illegally improper, non-evidence-based assumptions. Could you help me on one of those? I was confused. I got mixed up on which brother was which, and then I got confused about where the brother that died died. I think the death certificate said he died at home, and the testimony by the Petitioner said that he died somewhere else. Your Honor, I'd like to address that. Please do. First of all, there are three brothers. Unfortunately, their names are all extremely similar. Rajinder, who's the Petitioner in this case. Raj, who was a Petitioner in a case which this case, this Court decided in 2006 and which is a published decision, and I'll discuss in a moment. And the third brother, Ram, who is the brother who was murdered. Ram was murdered because Raj, who's not a party to this case, told the police the whereabouts of a militant Muslim terrorist leader. And in retaliation, the members of that leader's group murdered Ram. Meanwhile, when Ram was dying, when the militant Muslim leader was being killed by the police, his parting shot was to say that the three brothers were members of his terrorist group. And because of that, the two remaining brothers were killed. Let's see. You're saying Ram was killed by the police. No. The militant Muslim leader was killed by the police. Oh, the militant said that all three brothers were part of his group. Yes, even though they were Hindu. That was his parting shot. He was getting back at them by saying, you got me, but these three brothers are also part of my group. Ram had gone to the police. Okay, we know that because the Petitioner said that. The Petitioner said that. And how did the Petitioner find out that that's what the dying terrorist said? Because the police, when they detained him and his brother Raj, who was the informant, the police told him that this is what Saeed Ali Shah had said as he was dying. The police told that to Raj? Yes. Okay. To Raj and Rajinder. It's unfortunate that their names are so similar, Your Honor. It makes it confusing. There were a couple of places in particular where I had questions about potential inconsistency in the Petitioner's testimony. One of them was at the administrative record 179, which was the follow-up to earlier confusion. And the Petitioner testifies, Ram was not even in town. He was out of town. He went to get supplies. Ram was going to the temple, and the police vehicle stopped by him and asked him about Saeed's whereabouts, and they slapped him around. So that suggested that Ram was the brother who was the informant, as opposed to the brother who was murdered, because it says that Ram was the one who talked to the police about Saeed's whereabouts. Yes. Can you explain that apparent inconsistency? Yes, Your Honor. Unfortunately, the direct testimony was horrific in this case. And the attorney who appeared at the case wasn't prepared, didn't know the Petitioner met him a half an hour before they went in for the merits hearing. If none of that had happened, then probably we'd have a much clearer record, and the Petitioner wouldn't have used pronouns instead of proper nouns. I'm sorry? But it did happen. It did happen. You agree this is a very, very confusing record. Yes. Ram was picked up by the police, and this is also elucidated by this Court's decision in his brother's case in the Rajkumar v. Gonzales, which, Your Honors, is 444 F. 3rd, 1043. And the two are taken together. Ram was picked up and was told by the police he needed to let them know where Saeed Ali Shah lived. He didn't know. He was slapped around. His brother Raj, fearing for his brother Ram, did tell the police where Saeed Ali Shah lives. As a result, the Muslim militants killed Ram in retaliation as he was returning from Delhi, and the police took Raj and Rajinder into custody. So what you're saying now, because I didn't see that in the testimony, is that or maybe you could point me to it, was that Ram and Raj were both picked up by the police in question? Because I thought he was. Raj and Rajinder. And Rajinder? Yes. Ram initially was picked up by the police and slapped around and told that he needed to inform on Saeed Ali Shah, and that actually can only be found in the published opinion of his brother's case. And then Raj, and it's very consistent in the testimony in this case, he only ever says that it was Raj who was the informant and Ram who was murdered. Now, we never did get to where Ram was murdered, whether it was on his return home from Delhi as the Petitioner testified or whether it was at home, as the death certificate said. I think, first of all, we don't know what Jammu at home means. Jammu is the name of his province, and so Jammu at home as the place of death could mean Jammu, his home province, the state in which he lived. Oh, so you think the death certificate might have said at home the way if I got murdered in Anchorage, it might say at home, even though I live 365 miles away. Exactly. We don't know if at home is referring simply to his home state or his abode. In addition ---- Funny to use home for something as big as a province or a very large state. Exactly. But, Your Honor, we have no idea, and he wasn't asked to explain this alleged inconsistency. What he did testify was that his brother was on the way back from Delhi, and on questioning by the immigration judge, he stated that he believed that his brother was murdered on his way back from New Delhi just as he entered Jammu. But he also testified that his brother was killed while he was in jail. So he would have had no personal knowledge of where exactly the murder took place, and I have no way of knowing why the person who filled out the death certificate wrote the words that he wrote. And, Your Honor, I don't believe that it also forms a proper basis for an adverse credibility finding, because there is no connection between his claim and whether his brother died right after crossing the border or in his dwelling. And I'd also like to ---- I don't remember looking at a copy of the death certificate in the excerpts. It's probably in there, and I just overlooked it. Does it say where it's on? Your Honor, the death certificate is page 244. And I'd also like to address the other inconsistency that the alleged inconsistency that the immigration judge asserted with regard to that, and that is that the date of death, which is written 10-198, she interpreted to mean October 1st, 1998. And he testified that his brother died on January 10th, 1998, while he was in jail. Sure, that's a continental way of doing it. Yet the United States is the only country that puts the month first. And if the Court looks at the other dates on the certificate, such as the date of registration, 21-1998, we all know there is no month 20. Was this clarified at all in front of the agency? Your Honor, there was no opportunity for him to clarify. He wasn't asked about this. The only point at which this was raised was in the oral decision. And I'd like to point out that the judge who rendered the decision ---- It wasn't the same one. It wasn't the judge. She didn't hear a word of testimony. Yeah, well, so are you asking us to take judicial notice of the manner in which dates are expressed outside of the United States? I am, Your Honor. But even without doing that ---- Have you formally asked us to do that? In our brief, Your Honor, yes, we did. There wasn't a separate document filed. But even if we don't do that, Your Honor, if we look at the other dates contained in the death certificate, 28-4-1998 and 21-1998, I think that we all know that there is no 28th month and no 20th month. Did you address this in your opening brief? Yes, Your Honor. I did address ---- I addressed the inconsistency of the date and asked the Court to take judicial notice of the formatting of dates. And in our reply brief, also addressed it, Your Honor. The red brief doesn't seem to adopt that approach to the dates. We'll ask the other side about that. Your Honor, I'd like to preserve my last 24 seconds. Actually, you're 24 over. Oh, I'm 24 over. I'm sorry, Your Honor. Thank you. Counsel. Good morning, Your Honors, and may it please the Court. My name is Ben Ziland on behalf of the Attorney General. The instant petitions for review should be denied both individually and collectively because the agency's decisions were consistent with proper regulatory standards. What are your best inconsistencies to support the credibility? Well, as this Court noted, I would ---- the first major inconsistency is the confusion in Petitioner's testimony regarding which brother actually informed the police of Saeed Shah's whereabouts. And the importance of that inconsistency is that it goes to the heart of Petitioner's claim. Petitioner's claim is essentially that he was being persecuted in India by, separately, an implausible claim that he was being both Muslim, a group of Muslim terrorists were looking for him, as well as the Indian police, where he's a Hindu. But just go ahead. I don't think you need it to go to the heart of the claim anymore. Wasn't there a statutory change? That's correct, Your Honor, but that's in post-real ID applications. But this is not, right? This is not. That's correct. So this is a pre-real ID. So we're still looking at inconsistencies. Now, if you take the Petitioner's argument about the testimony, there's a first round of testimony which is confusing. He refers to brother, he, him, he, you don't know who is who. Correct. Then he's given an opportunity to explain himself, and he comes up with a more consistent story that, I guess, Raj was the informant and Ram was the one that was murdered and Raj and Petitioner were both put in jail. When you look at just the explanation, the follow-up explanation, doesn't that resolve the inconsistencies in the first round? I respectfully disagree with that because what he then says is I never mentioned Ram, even though he had previously stated that Ram was the one who was the informant. There is, as the immigration judge was and as this Court appears to be, perplexed as to which brother was actually the informant. He says Ram was the informant, and then he says Ram is living in Anaheim and that it was a different brother killed. Throughout the entire testimony, there are inconsistencies regarding which brother was killed, and I don't think his brief attempt to explain these inconsistencies overcome the original inconsistencies, because even within his explanation, there are inconsistencies regarding the fact that he never mentioned Ram, who he had  Well, he says, I'm looking at the testimony in AR-171, and the question was, do you know why your brother was killed, referring to Ram? And the answer was yes. And the question, why was your brother, referring to Ram, killed? And then the answer is, because my brother informed the police, the whereabouts of Syed Ali Shah and his companions. They warned my father that they will kill him, and he was not there at the time. And so the theory, I guess, of why this is inconsistent is that the first reference to brother is referring to Raj, because my brother Raj informed the police the whereabouts of Syed Ali Shah. So why isn't that, if we take the theory that his reference to brother referred to Raj, why isn't that consistent, then, with the story? You're saying the first example, where it just says my brother, right? Right. Why was your brother killed, referring to Ram, Ram, we assume? Because my brother informed the police. Now, the natural reading of that is, because my brother, the same brother, informed the police. But the argument is that that refers to Raj. Well, because, Your Honor, again, as you mentioned, the natural reading of that would, we would think it's the same brother. If one were to testify that one brother informed the police, and then another brother was killed, that would be what was presented before the court. But that's not what was presented before the immigration court. We had one explanation, which was my brother informed the police, and then that brother was killed, in the same sentence, no separation between which brothers. And then later on, saying it was one brother who informed the police, and then another brother who was killed. And then saying, I never mentioned the first brother. So an immigration judge reviewing the merits hearing transcript would be perplexed as to which brother actually informed the police and which brother. After all the fog was cleared and he was pressed on this point, isn't it pretty clear that he said it was Raj? The immigration judge did not feel that way. The immigration judge reviewing the transcript believed that this inconsistency was not resolved. That his explanation for this testimony was a contradiction of his original testimony, not, in fact, a clarification of his earlier ambiguity. I was particularly taken by the death certificate information in the case. And in the blue brief on page 25, the petitioner clearly makes the argument that the immigration judge misconstrued the significance of the dates, pointing out that the death certificate, which is not part of the record, states that the date was 10-1-98. This court may take judicial notice that India, like Great Britain in most countries, which were former British colonies, notes dates in the following manner, date, month, year, unlike the United States. Thus, Kumar's testimony that his brother died on January 10-98 is entirely consistent with the date set forth on the death certificate. That's in the blue brief. And in the red brief, your side comes back and ignores that and says the immigration noted that Kumar testified he was unclear about the events surrounding the death of Ram because Kumar was in prison at the time of his death. The immigration judge noted the death certificate marked as Exhibit 3 established that Ram died on October 10-98. However, in October, Kumar was residing in the United States, having departed India. So, I mean, they say, look, the I.J. got the dates wrong, because the I.J. doesn't know how they state dates over there. And you ignored that completely. What's your answer now to this huge discrepancy? Gershengorn If I could respond at this time, I'd like to say that there are the petitioner's attempts to use the death certificate in multiple ways. First, they say it's not a part of the record. But then they say, but the court should take judicial notice of the fact that the immigration judge misinterpreted the dates, that it should be looked at. Alito Is it or is it not part of the record? Gershengorn I would say that it is part of the record for this specific reason. The Petitioner's counsel during the merits hearing asked a question to Petitioner regarding the death certificate. He brought it into the record. I believe that's at page 278 of the last administrative record. Now, regarding the dates, if you look at the death certificate, which is on page 346 of the final administrative record, the dates are written differently if you look at his death. Now, it says some dates are written with a slash and other dates are written with a dash. Now, what I'm saying is we don't know if perhaps that was filled in. We never got the originals of it. We never got certified copies of it. And it's hard to ask this Court to take judicial notice of a date where the dates are actually written differently. Scalia I think we're being asked to take judicial notice of the system. Gershengorn Well, correct. But why we can't take judicial notice of the system is because the dates are actually written differently on the death certificate. If we looked at page 346. Alito You said there's a material difference between a slash and a dash? Gershengorn All the dates are written with a slash, except for the date of his death, which is written with a dash. And it seems to be a difference. Alito What's exciting about that? Gershengorn Your Honor, I'm not saying that there's anything exciting about it. But when we're asked to take judicial notice, it seems that if they were all written at the same time, if these were original documents which the Court asked for and never received. Kennedy Isn't it a matter of common knowledge that in most countries they put the day of the month first? Gershengorn Your Honor, that is correct. And if the Court were to take judicial notice of that, and we were then to accept the fact that the brother died on this date, and we were to accept the death certificate, then we're, contrary to what Petitioner argues about the inadmissibility of the death certificate. Then we have to look at the contradiction between how Petitioner himself testified regarding his brother's death, saying he died while trying to get supplies for his business, and then the death certificate which says that Petitioner died at home while in Jammu. Kennedy It says, actually, place of death, Jammu, at home. Gershengorn At home. As this Court mentioned earlier, I think to look at the word at home in the broadest context would be unfair. Kennedy I don't know the geography of Kashmir. I kind of thought that Jammu was a big state, not just a town. Is that correct? Gershengorn That is correct. I believe it's a city in Kashmir, or a state. Kennedy It's just a city? Gershengorn I believe it's a province within Kashmir. Kennedy How do you know that? Gershengorn From the State Department report. Kennedy Is it a city or a province? Gershengorn My understanding is that it's a province. Kennedy Like Texas as a state? Gershengorn Correct, Your Honor. But, I mean, it's smaller in size than Texas would be. Kennedy So it might be like Delaware, it might be like Alaska? Gershengorn Correct, Your Honor. I see that my time has expired. Thank you. There are no further questions. Thank you. Roberts I have a question. Kennedy Let's go ahead then with some rebuttal. What is the story on the death certificate? Because you say in large, bold, underlying type it's not part of the record. So you're asking us to take judicial notice of something that's not part of the record. Gershengorn Here's the story on that, Your Honor. My feeling is a saw goes both ways, but the judge can't have it both ways. She can't say that when they did not submit the original, they waived that submission. And if the Court looks at, I believe it's page 241, it's marked as Exhibit 3ID. And on the record, the initial judge, Judge Loss, stated that it was being marked for ID purposes only. And nowhere in the record does it say it was ever admitted as evidence. We're not arguing that it's inadmissible, as counsel just stated. That's not our position. Our position is you can't say it's not admitted into the record and then use it as two points for your adverse credibility finding. It can't not be evidence and count as substantial evidence both at the same time. So that was our point on that. And I would just like to address, when counsel stated that Rajinder testified that stated that he hadn't mentioned his brother before when he was asked on somewhat redirect by the immigration judge, he didn't say, I didn't mention my brother before. He said, I didn't mention Ron's name before. And, of course, that's the problem we have with this transcript, is the rampant abuse of pronouns without any proper nouns. And that testimony was at 179. Did he mention Ron's name before or not? No, he didn't. Just pronouns. He didn't. He just used pronouns. And it's very confusing. And in our grade brief, Your Honor, at page 3, I attempted to clarify pages 3 and 4 by inserting in brackets what I believe was the proper noun that he was referring to, had he used proper nouns. And I'm sitting here tempted to think, well, if the case is so confusing and you admit that and the direct examination was a disaster, has your – did your client even come close to carrying his burden? I believe, Your Honor, if someone sits down and really reads the transcript and takes the time, yes, it is clear, it is consistent. And when we strip away these adverse credibility findings that are baseless – But who is that someone? I mean, that's D.I.J. Yes. And I don't believe that that was done. I don't believe it was done. And what she did do was rely on the trial attorneys, the government attorneys' misstatement of Rajender's prior testimony, saying, well, you earlier said this and you earlier said that. And in response, Rajender very clearly said, I never said that. I said that Rahm was the one who was murdered, that Raj was the one who was the informant. We have to say, in order to grant the petition, that D.I.J. was clearly wrong. I can't remember the exact words of the statute, something like that the record compels the conclusion that D.I.J. was wrong. If it's that hard to understand it, how can it compel any conclusion? Your Honor, it's confusing, but it isn't impossible to understand. When I sat down and I read the transcript and I read it a couple of times, it was clear to me. But just reading it casually once or just reading it once. It's a mess. It's a mess and you're not going to get there. But if you take the time to read it a couple of times. I read it and I didn't feel compelled to do anything. I had no idea what these people were saying. Well, I believe and I believe that the excerpts and explanations in both our blue brief do clarify it and lay it out in chronological order, which, of course, unfortunately wasn't the order in which the testimony was laid out on direct examination. But I believe in that. When we strip away these improper, speculative, adverse credibility findings and the ones that are based on misstatements of the record, what we have is the exact same facts upon which this Court found and the exact same players upon which this Court found in his brother's case, in the Raj Kumar case, that he had established statutory eligibility for asylum and remanded to the BIA for an exercise of discretion. Thank you, counsel. Thank you.
judges: Trott, Kleinfeld, Ikuta